11 STEWART, Judge.
Norma Harris sought the return of two foster children who previously lived with her but were later removed by authority of the Department of Social Services (DSS). Following a dispositional review hearing, the trial court held that DSS possesses sole authority to place the children at issue in the foster home of its choice and may initiate adoption proceedings as it sees fit. In dicta, the court stated its belief that the best interests of the children would not be served by returning them to Harris’ home. We agree and affirm the lower court’s ruling.
FACTS
Tammy Weeks voluntarily placed two of her children, K.W. and S.W., with Norma Harris, appellant, when the children were four months and fourteen months old, respectively. Several months later, the Department of Social Services awarded Harris the dual certification of foster/adoptive parent. That certification made it possible for Harris to initiate adoption proceedings should the children become free for adoption. Dining their stay with Harris, K.W. and S.W. became eligible for adoption; however, adoption was never finalized.
After three years, it was suspected that Harris was drinking too much alcohol, was physically abusing the children, and did not have income sufficient to qualify as a foster parent. Moreover, DSS learned that Harris had been stopped for erratic driving. The officer making the stop reported that Harris had alcohol on her breath and that K.W. and S.W. were in the ear and were not secured by safety restraints, contrary to express DSS regulation and the law. A DSS investigation led the department to remove the children from the home and to decertify Harris.
Several hearings were held on the matter within the department at Harris’ request. She also requested access to DSS files and records, but was denied access because of department policy and the confidentiality requirements of LSA-R.S. 1246:56. At each hearing, the hearing officer upheld the department’s decision to decertify Harris. The matter was eventually heard before an administrative law judge, who also agreed with the department’s original determination.
Subsequently, Harris filed a Petition for Judicial Review and Injunctive Relief in East Baton Rouge Parish. The trial court held that, although DSS decertified Harris contrary to her constitutional rights, the court lacked subject matter jurisdiction to order *616 the return of the children to Harris’ home. DSS appealed to the First Circuit Court of Appeal. The court affirmed the lower court’s ruling. To overcome the jurisdictional hurdle, Harris filed suit in East Carroll Parish Juvenile Court; however, that court rejected Harris’ demands. It is from this judgment that Harris now appeals.
DISCUSSION

Assignment 1

By her first assignment of error, Harris argues that she was denied due process of law because the trial court erroneously denied her access to DSS records and relieved DSS of proving abuse and/or neglect. Harris petitioned the court for access to the DSS investigative files which triggered Harris’ de-certification and loss of the children. The trial court denied access based on LSA-R.S. 46:56(F)(1), which provides that records pertaining to the foster care of children and/or investigation of abuse and neglect of children shall remain confidential, granting limited access thereto only to attorneys appointed to represent the sole interests of the children and Court-Appointed Special Advocates. Harris argues that her constitutional right to view exculpatory evidence and obtain potential witness lists are paramount to the statutory rule of confidentiality.
| 3She has cited for our consideration the ease of State in the Interest of Delcuze, 407 So.2d 707 (La.1981). In Delcuze, our Supreme Court held that LSA-R.S. 46:56(F)(1) denied parents due process of law by prohibiting them from discovering contents of DSS case records pertaining to their children. Hence, the Court held that a parent’s constitutional rights, as such, supersede LSA-R.S. 46:56(F)(1). That jurisprudentially created exception was later codified at LSA-Ch.C. Art. 652, et seq.
Harris submits that, although she did not give birth to K.W. and S.W., she has been their mother for all intents and purposes for most of their lives. She claims a higher status than the typical foster parent because the natural mother specifically chose her to raise these children. Thus, she considers her rights tantamount to the rights enjoyed by and afforded to natural parents and should, therefore, be privy to the Delcuze exception. We cannot agree.
It is not unusual for foster parents to get attached to the children in their charge. To allow Harris to claim special status because of her attachment to these children would wreak havoc upon the entire foster care system and obviate the policy considerations behind LSA-R.S. 46:56(F)(1). The state’s interest is to protect confidential informants from the negative ramifications of reporting what they know and to encourage prospective informants to come forward, comfortable in the knowledge that their identities will not be revealed. Harris has not asserted any constitutionally-protected right which outweighs this interest. While she previously enjoyed the privilege of foster parenthood, that privilege does not translate into a constitutionally-protected status equal in importance to natural parenthood. Cf. Hargrave v. Gaspard, 419 So.2d 918 (La. 1982), where the Court | ¿distinguished Del-cuze and refused to allow prospective adoptive parents to assert the parental exception to the confidentiality rule.
In the instant case, the trial court applied the appropriate law. The exception to the confidentiality requirement of LSA-R.S. 46:56(F)(1) does not pertain to foster parents. Thus, this portion of the assignment lacks merit.
Harris also argues that the trial court erred in failing to require DSS to prove abuse or neglect. In cases such as this, where a child has been adjudicated in need of care, DSS is granted exclusive custody of the child and is solely responsible for overseeing the “placement, care, treatment, or any other considerations deemed necessary from the resources that are available for the [child].” LSA-Ch.C. Art. 672(A). By the authority granted in this statute, DSS is not obliged to prove abuse or neglect before moving a child within its custody from one foster home to another. The trial court did not err in this respect.

*617
Assignment %

By her second assignment of error, Harris argues that the trial court’s findings were contrary to law and the evidence. In written reasons for judgment, the trial court held that it does not have the authority to transfer custody of the children within DSS or between foster homes. Yet, in an abundance of caution and in anticipation of appeal, the court opined that it is in the best interest of K.W. and S.W. to remain in the current foster home.
The court heard the expert testimony of psychologist, Dr. Bobby L. Stephenson. Dr. Stephenson opined that the children have improved psychologically since moving in with new foster parents. He testified that S.W. and K.W. have bonded with their new foster parents and he recommends that they initiate adoption proceedings.
| gTestimony was also adduced from several social workers within DSS. Among them, Nancy Bragg, adoption specialist with the Office of Community Services, testified that DSS had experienced problems with Harris in the past. She had been cited for the unsanitary and unkempt state of her home in 1992.
Foster care worker, Carla Newsom, corroborated Braggs’ testimony, stating that Harris’ kitchen sink and counter tops were covered with very old food and dirty dishes. As a result of the filth, Harris’ home did not comply with minimum agency standards. Newsom also faulted Harris for failing to inform DSS when she became unemployed.
Carolyn Antwine, who backs up investigative matters for DSS, determined through her own investigation that Harris failed to comply with agency requirements for foster parents because she drank while driving the children, failed to use child safety seats and seat belts, and did not make sufficient income to support herself independently of the children’s DSS stipend.
Susan Vigen, Ph.D., qualified as an expert in the field of psychology. She testified for the plaintiff. She spent time with K.W., S.W., and Harris on two occasions. Her opinion was that K.W. and S.W. would not be psychologically damaged if they were returned to Harris’ care. However, the trial court chose to discount the testimony because Dr. Vigen had no frame of reference from which to determine whether it is in the children’s best interest to stay in their current foster home or to return to Harris.
Upon reviewing the record and reading the trial court’s reasons for judgment, we cannot say that the trial court’s findings are manifestly erroneous. The evidence is sufficient to show that K.W. and S.W. are psychologically and physically better |6off in the care of their present foster parents. Thus, Harris’ second assignment of error is also without merit.
CONCLUSION
In summary, we find that the trial court properly denied Norma Harris access to the confidential reports of the Department of Social Services. As a former foster parent, she is not entitled to be elevated to the status of a natural parent, with all of the rights and privileges connected thereto. Furthermore, the court did not err in holding that the Department of Social Services, and not the court, is charged with the placement of children adjudged to be in need of care. Finally, the trial court did not make findings in this case which were contrary to evidence or law. The decision of the trial court is affirmed. Costs of this appeal are taxed to Norma Harris.
AFFIRMED.